Michael Berbiglia v. Commissioner.
Berbiglia v. Commissioner
Docket No. 23991.
United States Tax Court
1951 Tax Ct. Memo LEXIS 244; 10 T.C.M. (CCH) 413; T.C.M. (RIA) 51135; May 4, 1951
Daniel L. Brenner, Esq., 2700 Fidelity Building, Kansas City, Mo., and John W. Snider, C.P.A., for the petitioner. Marvin E. Hagen, Esq., for the respondent. LEMIRE Memorandum Findings of Fact and Opinion This proceeding involves a deficiency of $91,184.05 for the fiscal year ended September 30, 1946. In an amended answer the respondent asked that the deficiency be increased to $93,782.27. The questions in issue are (1) whether the petitioner realized a taxable gain upon the transfer of a retail liquor business *245 to a newly organized corporation in exchange for its capital stock, and (2) whether a payment which petitioner received in settlement of a damage suit for injury to his business constituted taxable income. Other adjustments made by the respondent are not in controversy here. The facts have been stipulated in part. Findings of Fact The stipulated facts are found as set out in the written stipulation. Petitioner is a resident of Kansas City, Missouri. He filed his return for the taxable year ended September 30, 1946, with the collector of internal revenue for the sixth district of Missouri. Petitioner kept his books and filed his income tax returns on an accrual basis and for a fiscal year ending September 30. During the period June 16, 1934, to May 1, 1946, the petitioner operated a retail liquor business as a sole proprietorship under the trade name "Berbiglia." As of April 30, 1946, he was operating nine retail liquor stores in Kansas City, Missouri, at the following locations: 1100 East Armour Boulevard, 4106 Mill Creek Boulevard, 2601 Troost Avenue, 301 East 10th Street, 2 West 10th Street, 16 West 12th Street, 601 West 48th Street, 105 West 63rd Street, 340 West 75th *246 Street, On May 1, 1946, petitioner transferred all of the assets and liabilities of his retail liquor business, except the leases on which the stores were located, to a corporation, Berbiglia, Inc., in exchange for 245,000 shares of its common stock and an unsecured negotiable promissory note of the corporation in the amount of $99,171.42, payable on demand and bearing interest at the rate of 3 per cent per annum. The corporation also assumed, and later paid, an income tax liability of the petitioner in the amount of $63,500. Berbiglia, Inc., hereinafter sometimes referred to as the corporation, was organized under the laws of the State of Missouri April 2, 1946. It had an authorized capital of $340,000 divided into 400,000 shares of common stock of a par value of 10 cents per share and 50,000 shares of 5 per cent cumulative convertible preferred stock of a par value of $6 per share. The assets and liabilities of petitioner's liquor business, as shown by the balance sheet as of April 30, 1946, were as follows: Assets
Current Assets
Cash in banks and on
hand
$ 19,955.84
Accounts receivable
1,236.37
Merchandise inven-
tory
304,306.88
$325,499.09
Other Assets
Deposit on fixtures
500.00
Fixed Assets
Cost
40,112.24
Less: Reserve for
depreciation
13,278.62
26,833.62
Prepaid Expenses
7,776.64
$360,609.35
Liabilities
Current Liabilities
Notes payable -
bank
30,224.06
Accounts payable
130,362.39
Federal and State
income taxes
63,500.00
$224,086.45
Michael Berbiglia,
Capital Account
136,522.90 [1]
$360,609.35
*247 All of the stores were located on premises leased by the petitioner individually. The lessors would not consent to an assignment of the leases to the corporation and for that reason they were all retained by the petitioner. At the time of its organization the corporation acquired no other physical assets than those appearing in the balance sheet as shown above. One of the nine stores acquired by the corporation, that located at 301 East Tenth Street, was transferred to the corporation subject to a contract for its sale which had been entered into by the petitioner. The contract was consummated and the store sold by the corporation on May 31, 1946. The sale price was the book value of the inventory, and fixtures, with no allowance for good will. There was no sale or assignment of petitioner's lease on the premises. The lessor permitted the new owner to operate the store *248 under an amended lease but did not relieve the petitioner from his obligations on the lease. The net sales of the liquor business and the taxable net income or losses for the years shown below were as follows: Taxable net
Year
Net sales
income (or loss)
1937
($ 12,315.26)
1938
16,344.09
1939
23,240.52
1940
28,082.99
1/1 to
9/30/41
$ 365,569.28
36,857.82
1942
609,641.74
62,127.76
1943
1,088,015.17
152,680.82
1944
1,196,549.79
94,387.72
1945
1,716,745.24
61,870.33
10/1/45 to
4/30/46
1,164,751.65
97,934.72 Petitioner received a basic salary from Berbiglia, Inc., after May 1, 1946, of $10,000 per year plus 20 per cent of the profits over $50,000. The figures shown in the above table are without any allowance for petitioner's salary. During 1946, 1947, and 1948 the corporation sold at par and issued 9,218 additional shares of its preferred stock which was immediately converted to common stock. Approximately one half of those shares, or 4,689, were issued in satisfaction of preexisting liabilities and the balance, 4,529 shares, for cash. At the time the corporation was organized petitioner undertook to have its stock issue *249 underwritten by one or more reputable local investment banking firms but they refused to handle it. Petitioner had built up his liquor business largely through his own personal efforts and his business contacts. He employed a manager for each of the stores but he always exercised close supervision and control over all departments of the business. He did all of the buying, selected the sites for the stores, arranged the window displays, and placed all of the advertising. After its incorporation, as well as before, the business was generally regarded by the liquor wholesalers and the public as petitioner's individual business. The respondent has determined that petitioner realized a net capital gain on incorporation of his liquor business, or more specifically, on the exchange of the assets of that business for stock in Berbiglia, Inc., and other property, in the amount of $81,335.71, computed as follows: Value of stock and other property received from Berbiglia, Inc.: 245,000 shares of common stock
$606,018.01
3% unsecured demand note
99,171.42
Credit set up by corporation for taxpayer as "Provision for
Federal Income Tax"
63,500.00
Total value of stock and other property received
768,689.43
Cost of assets transferred to Berbiglia, Inc.: Gross assets per original return
$347,569.97
Deduct liabilities per original return except Provision for
Federal Income Tax of $63,500.00
160,398.55
Balance
187,171.42
Add: Undepreciated balance of leasehold improvements, etc.,
disallowed as deductions and not included in assets above
12,851.48
Cost of net assets transferred to corporation
200,022.90
Gain realized
568,666.53
Gain limited by section 112 (c) (1) to value of other property as
follows: 3% unsecured demand note
99,171.42
Credit set up by corporation for taxpayer as "Provision for
Federal Income Tax"
63,500.00
Total
162,671.42
Gain of $162,671.42 as above as limited by section 117: 50% of $162,671.42
$ 81,335.71
*250 Berbiglia, Inc., did not have any good will of material value at the time of its incorporation or during the taxable year involved. During 1946 and for several prior years the petitioner had proprietary interests in several other business enterprises, including the B-1 Beverage Company, in which he owned a one half partnership interest. One of the products of that firm was a sparkling water beverage which it bottled and sold under a franchise acquired from the B-1 Beverage Company of St. Louis, Missouri, in 1942. In March 1945 the franchise was withdrawn and in June of that year the petitioner and his co-partner filed a suit against the B-1 Beverage Company of St. Louis, Missouri, and others, in the Circuit Court of Jackson County, Missouri, alleging in their petition that the B-1 Beverage Company had breached its contract with the plaintiffs and: "* * * that by reason of the said breach of said contract by said defendant, said plaintiffs are unable to manufacture B-1 beverages and said bottles, cases and hulls are of no value to plaintiffs and plaintiffs have been damaged in said sum of Twenty-five Thousand Three Hundred Fifty-four Dollars and Fifty-seven Cents ($25,354.57); *251 that the reasonable value of said franchise to plaintiffs was One Hundred Thousand Dollars ($100,000.00) and by reason of the defendant B-1 Beverage Company's act in breaching its franchise agreement with plaintiffs and refusing to deliver to plaintiffs units for the manufacture of B-1 Beverages, plaintiffs have been damaged in the additional sum of said One Hundred Thousand Dollars ($100,000.00); that plaintiffs introduced B-1 beverages in the Kansas City market and plaintiffs devoted a great amount of time to the promotion of said beverage and employed numerous persons and spent large sums in advertising to promote the sale of said beverage; that the reasonable value of plaintiffs' time and the expenditure made for help and advertising in promoting said product is Twenty-five Thousand Dollars ($25,000.00) and by reason of the defendant B-1 Beverage Company's act in breaching its franchise agreement with plaintiffs, the plaintiffs have lost the expenditure made in promoting said beverage and have been damaged in the additional sums of Twenty-five Thousand Dollars ($25,000.00). * * *
"Wherefore, plaintiffs pray judgment against the defendants and each of them in the sum of One *252 Hundred Fifty Thousand Three Hundred Fifty-four Dollars and Fifty-seven Cents ($150,354.57) and for a temporary restraining order and on final hearing a permanent injunction restraining and enjoining the defendants from picking up and taking into their possession any wood cases, bottles, cartons, or hulls containing the emblem 'B-1' thereon, and costs herein incurred." The suit was settled out of court and petitioner received $2,750 as his share of a compromise payment by defendants of $5,500. Opinion LEMIRE, Judge: In this proceeding the respondent takes the position on the first issue that petitioner realized a net capital gain on the exchange of the assets of his liquor business for stock of Berbiglia, Inc., and other property, which is taxable under section 112 (c) (1), Internal Revenue Code, to the extent of the amount of the corporation's promissory note, $99,171.42. He contends that the stock which petitioner received had a value of $163,500 in excess of the value of the tangible assets, attributable to good will. Thus, the questions for our determination, as presented in respondent's brief, are, first, whether the corporation's demand note for *253 $99,171.42 which was issued to the petitioner as part consideration for the assets was "security" within the meaning of section 112 (b) (5), Internal Revenue Code, and, second, whether and in what amount the value of the stock which the petitioner received in exchange for the assets reflected the value of good will and other intagibles acquired by the corporation. Passing the question of the taxability or nontaxability of the transaction as a whole under section 112 (b) (5), we are satisfied from the evidence, and have so found above, that the corporation did not have any good will of material value at the time of its organization or during the taxable year 1946. The retail liquor business in Kansas City at that time was overcrowded and highly competitive. Sales depended largely on the brands of liquor handled, the sale prices and the ability to acquire stock from the wholesalers. The Berbiglia stores handled the well-known brands in competition with other retailers. Their sales were due to some extent to the favorable location of the stores but the corporation did not own or lease the stores. These were all leased to the petitioner individually and he retained *254 the leases after the business was transferred to the corporation. The evidence before us is convincing that whatever good will there may have been was attached to and remained with the petitioner individually and was not acquired by the corporation. This would seem to dispose of the issue, since, under the respondent's theory, the alleged excess value of the stock which petitioner received over the value of the tangible assets transferred to the corporation was attributable to good will. The remaining issue is whether the amount of $2,750 which petitioner received in settlement of the damage suit constituted taxable income. This depends upon whether the payment was, in fact, to compensate for damages or capital losses resulting from the alleged wrongful cancellation of the franchise or whether it was in whole or in part to compensate for the loss of future earnings. See Raytheon Production Corp., 1 T.C. 952, affd., 144 Fed. (2d) 110, certiorari denied, 323 U.S. 779; Swastika Oil & Gas Co. v. Commissioner, 123 Fed. (2d) 382, certiorari *255 denied, 317 U.S. 639; Arcadia Refining Co. v. Commissioner, 118 Fed. (2d) 1010; H. Liebes & Co. v. Commissioner, 90 Fed. (2d) 932. To determine this question, it has been said: "The fund involved must be considered in the light of the claim from which it was realized and which is reflected in the petition filed." Farmers & Merchants Bank v. Commissioner, 59 Fed. (2d) 912. See also Durkee v. Commissioner, 162 Fed. (2d) 184, and Swastika Oil & Gas Co. v. Commissioner. supra. The terms of the settlement agreement, if any, are not before us and have not been explained. The damages claimed by the petitioner and his associate in their petition filed in the Circuit Court of Jackson County were as follows: (1) Loss of investment in bottles, hulls and cases, $25,354.57. (2) Loss of "reasonable value" of franchise, $100,000. (3) Loss of time and money spent in advertising and promoting B-1 beverages, $25,000. (4) Damage resulting from acts of competitor depriving plaintiffs of use of the franchise and securing it for their own use, $150,354.57. The petitioner would not be taxable on any portion *256 of the recovery attributable to the investment in bottles, hulls and cases or to cost of advertising. Such amount would constitute a recovery of capital. Whatever amount represented the value of the franchise, or damage resulting from its loss, and its use by others might or might not be taxable income, according to whether it included the loss of estimated future earnings. The total amount recovered by the petitioner and his associate here was only $5,500. That is much less than the loss claimed on their investment either in the physical assets or in advertising. We think it reasonable to conclude in these circumstances that no allowance was actually made for future profits. The petition filed by the plaintiffs did not specifically claim the loss of any future profits and the evidence is that no estimate of future profits was or reasonably could have been made. We think that the respondent erred in including the amount in question in petitioner's taxable income. Decision will be entered under Rule 50. Footnotes
1. The net value of the assets (Michael Berbiglia. capital account) was first shown as $123,671.42, the par value of the shares of stock issued to petitioner plus the amount of the note, but was later increased to $136,522.90 by an adjustment made by the examining revenue agent and agreed to by the petitioner.↩